IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| RELATION INSURANCE SERVICES SELECT, INC., <br><br> Plaintiff, <br><br> v. <br><br> MEREDITH PERRY SOX, CHRISPTOPHER E. PERRY, and PERRY GROUP INSURANCE SERVICES, LLC, <br><br> Defendants. | Civil Action No.  3:25-cv-06049-MGL  <br><br><br> **COMPLAINT** |

Plaintiff Relation Insurance Services Select, Inc. ("Relation") complains of the wrongful acts of the defendants, who have engaged in a pattern of deception and unfair competition to raid Relation's agency in Lexington, South Carolina. The harm is ongoing. Relation seeks injunctive relief and, to the extent calculable, monetary damages.

**NATURE OF THIS ACTION**

1. Relation is a leading insurance brokerage firm in South Carolina and beyond. In July 2021, Relation committed to paying nearly $10 million to acquire the assets of Perry Insurance Group, Inc. ("Perry Insurance Group") from David Perry—the father of Defendants Christopher Perry and Meredith Perry Sox ("Sox"). The assets Relation acquired included Perry Insurance Group's book of business, its goodwill, and the marks of the Perry Insurance Group brand.

2. Sox held a key role at Perry Insurance Group before the 2021 acquisition, and she received a commensurate position at Relation upon the transaction closing. As she joined Relation, Sox contractually promised not to engage in certain competitive activities during her employment with Relation or in the 2-year period immediately after her departure, whenever that may occur.

3. This lawsuit has become necessary because recent events show it was only a matter of time before Sox and certain of her family members began to undermine Relation with the aim of stealing back assets Relation acquired from her family's business for millions of dollars. Sox has breached restrictive covenant obligations owed to Relation, and all defendants have engaged in violations of federal and state statutes prohibiting unfair competition.

4. The known wrongful acts by the defendants are grounded in deceit. In early 2025, Sox notified Relation she intended to resign her position as one of its External Growth Leaders based on her "need to prioritize [her] health." Her employment with Relation ended on February 3, 2025. At that time, Relation had no reason to question Sox's plan to leave the insurance industry to focus on her health issues. But her true motivations soon became clear.

5. Within just weeks after leaving Relation, Sox launched a new competing insurance brokerage just down the road from the Lexington office where she worked for the duration of her employment with Relation and Perry Insurance Group before that. Sox's deception regarding her plan to compete was only the start of the lying, cheating, and stealing Relation began to uncover.

6. Instead of taking steps to distinguish her new competing business from the Perry Insurance Group brand Relation acquired in 2021, Sox has done the opposite—she deliberately has sown confusion and created a false impression the businesses are the same. Sox did so to steal back the goodwill associated with Perry Insurance Group that Relation purchased at great expense. Among other things:

   a) Sox incorporated her competing business as Perry Group Insurance Services LLC ("Perry Group Insurance")—a name requiring a double-take to differentiate;

   b) she and co-conspiring family members chose contact information, including e-mail addresses, that are virtually indistinguishable (meredith@perryinsgrp.com)

    to those used at Perry Insurance Group (meredith@perryinsgroup.com), the latter domain being an asset Relation explicitly purchased in the 2021 transaction;

  c) Sox and others now using the @perryinsgrp.com e-mail domain—including her brother Christopher Perry—also are using without authorization the same "Perry Insurance Group" logo Relation acquired in the deal:



  d) within only days of Sox leaving Relation to supposedly "prioritize her health," certain account managers with whom Sox closely worked in Relation's Lexington office abruptly resigned before next surfacing at Perry Group Insurance; and

  e) Perry Group Insurance opened its new office less than two miles away from the Relation/Perry Insurance Group office where Sox, David Perry, and the recently-departed account managers worked.

  7. Relation has every reason to believe Sox and her co-conspirators' choices of name, e-mail address, office location, and assumed account management staff for Perry Group Insurance are not accidental. They are action items in a plan to deceive Relation's clients and prospects into incorrectly believing Perry Group Insurance is the same as Relation's business down the road.

  8. The extent of the known unfair competition is worse still. Before leaving Relation, Sox sought to exfiltrate a large "Active Client List" of Relation's clients serviced in its Lexington office to her personal possession. And it is now apparent to Relation that she has targeted insureds on that list to move their business to Perry Group Insurance or her brother's insurance agency—

whether the clients knew of the change or not.  Clients have expressed actual confusion to Relation, and many clients whose policies Relation has lost so far *even have informed Relation they did not authorize such a change at all*.

9. There is no justification for Sox and her co-conspirators' concerted efforts to steal back what Relation rightfully acquired in 2021.  Relation already has lost numerous policies from its book of business due to the defendants' misconduct, and the defendants have ignored Relation's warnings that their unfair competition must immediately cease.  Court intervention is necessary to stop the continuing harm.

## PARTIES, JURISDICTION, AND VENUE

10. Plaintiff Relation is a North Carolina corporation with its companywide principal place of business in Illinois.  Relation is authorized to do business in South Carolina.

11. Defendant Sox is domiciled in South Carolina, is known to reside at 1270 Corley Mill Road, in Lexington, South Carolina, 29072, and may be served with process wherever she may be found.

12. Defendant Christopher Perry is domiciled in South Carolina, is known to reside at 1914 Park Street, in Columbia, South Carolina 29201, and may be served with process wherever he may be found.

13. Defendant Perry Group Insurance is a South Carolina limited liability company, with its principal place of business in South Carolina.  Perry Group Insurance may be served with process through Sox—its registered agent—at 407 West Main Street, in Lexington, South Carolina 29072.

14. The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because Relation has brought claims against all defendants under a federal statute, Section 43 of the Lanham Act, 15 U.S.C. § 1125.

15. Additionally, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because Relation has claims for damages and other relief above $75,000, and complete diversity of citizenship exists between Relation and the defendants.

16. Venue is proper under 28 U.S.C. § 1391(b) because each defendant resides in the Columbia Division of the District of South Carolina. In addition, a substantial portion of the events giving rise to this dispute occurred within this district.

**FACTS**

**A.** ***Relation's Business and its Nearly $10 Million Acquisition of Perry Insurance Group in Late-July 2021.***

17. Relation and its affiliates comprise a leading nationwide insurance brokerage firm offering business insurance, employee benefits solutions, retirement services, risk-management services, annuities, life insurance, and commercial and personal lines of property and casualty insurance products. Relation offers these and other insurance products and services to clients in the Carolinas and other areas of the United States.

18. Over the years, Relation has expanded its offerings and geographic reach through organic growth and a series of acquisitions of other insurance brokerages aligned with Relation's strategic vision. The 2021 purchase of Perry Insurance Group's business is one such acquisition.

19. On July 30, 2021, Relation closed on its purchase of Perry Insurance Group's assets from its owner, David Perry. The associated Asset Purchase Agreement ("APA") is Exhibit 1 to this Complaint, with certain schedules omitted to protect confidentiality.

20. The assets Relation purchased through the APA include (among other things) the lists of Perry Insurance Group's clients and prospects, all of its insurance expiration and renewal rights, all "associated Goodwill, Confidential Information, files, claims files, books," and "the sole right to collect and to retain" premiums and commission on the book of business transferring from Perry Insurance Group to Relation. (Exh. 1, APA, art. 24).

21. Relation further acquired all of Perry Insurance Group's "Intellectual Property and all of the rights of [Perry Insurance Group] in any Intellectual Property licensed by [it]," its domain names and email addresses, and all "Acquired Marks," including all of Perry Insurance Group's "registered or unregistered trademarks and service marks (and any derivations thereof) used in providing" insurance services and products. (*Id*. arts. 9.1(e) & 24). The logo for Perry Insurance Group reproduced at Paragraph 6.c, above, was specifically included in the assets transferred to Relation under Schedule 4.2 of the APA. (*Id.* sched. 4.2(bb)).

22. The purchase price Relation paid to David Perry for the assets covered by the APA included nearly *$8 million* in cash, equity above *$1 million* in value, and *further* performance-dependent cash payments and earn-outs. (*Id.* art. 21).

23. Prior to the sale, Perry Insurance Group had its main office on Sunset Boulevard in Lexington, and it used the e-mail domain @perryinsgroup.com to conduct business.

**B.**   *Sox Agreed to Abide by Certain Reasonable Restrictive Covenants as a Condition of Her Employment with Relation.*

24. Prior to the July 2021 transaction, Sox worked for Perry Insurance Group in one of the highest-paying positions in the company. Upon the transaction closing, Relation hired Sox in a key client-facing position, earning at least $140,000 per year, with potential bonuses and future raises. She executed an Employment Agreement with Relation in line with her job duties and the need for Relation to protect its legitimate interests in its client relationships and the substantial

confidential information to which Sox had access. Sox's Employment Agreement is attached to this Complaint as <u>Exhibit 2</u> ("Employment Agreement").

25. In Section 3(a) of her Employment Agreement, Sox promised not to engage in any conflicts of interest during her employment with Relation, including taking actions to divert away Relation clients or employees. (Exh. 2, § 3(a)).

26. In Section 3(b), Sox further promised that, through two years after leaving Relation, she would not "directly or through another Person . . . recruit, solicit, encourage, or induce" any employee of Relation to leave to work for a competitor, so long as Sox had direct contact with the employee at issue during the last year of her employment. (Exh. 2, § 3(b)).

27. Sox made several further promises in Section 3(c) of her Employment Agreement, for the protection of Relation's client relationships against unfair competition. Specifically, Sox promised not to, among other things:

> (i) directly solicit, or attempt to solicit, the insurance or employee benefit plan business of any Client for the purpose of providing Applicable Products or Applicable Services to, diverting, accepting the business of, or underwriting for any such Client any Applicable Product, any Applicable Service, or any other product or service of the type sold or provided by [Sox] during the twelve (12) months prior to the Termination Date; . . .
>
> (iii) directly induce any Client to terminate, cancel, not renew or not place business with the Company, [Relation], or any other member of the Relation Group; . . .
>
> (v) in the Territory, perform Applicable Services of the type sold or provided by [Sox] during the twelve (12) months prior to the Termination Date on behalf of any Clients; or . . .
>
> (vii) directly supervise the performance of insurance or benefits services of the type sold or provided by [Sox] during the twelve (12) months prior to the Termination Date on behalf of any Clients . . .

(Exh. 2, § 3(c)). Sox additionally promised she would not engage in any activities restricted in the above covenants "through another Person"—*i.e.*, indirectly. (*Id.* § 3(c)(ii), (iv), (vi), (viii)).

7

28. Section 3 of the Employment Agreement defines "Territory" to include, in relevant part, the "counties and municipalities" where Sox "conducted business on behalf of" Relation in the last 12 months of her employment." (Exh. 2, § 4(a)(ii)).

29. With respect to off-limits "Clients," Sox agreed they include those she had "contact or interaction" with on Relation's behalf, "for purposes of: (A) selling, providing, or placing . . . [Applicable Products]; or (B) rendering [Applicable Services] in the twelve (12) months" prior to the termination of her employment. (Exh. 2, § 4(a)(ii)).

30. Section 4 of the Employment Agreement defines "Applicable Products" as including "insurance policies, bonds, health, accident, or athletic insurance plans or programs, employee benefit plans, or other insurance-related plans, products, agreements, or programs." (Exh. 2, § 4(a)(ii)). And it defines "Applicable Services" to include "claims management, claims administration, enrollment services, program administration, loss prevention, consulting, third-party administration services, or other consulting services." (*Id.*).

31. Sox acknowledged in Section 8 of the Employment Agreement that the restrictions contained in Section 3 "are reasonable and necessary for the protection of . . . [Relation's] business interests, [and] that irreparable injury will result" from their breach. (Exh. 2, § 8(a)). Section 8(b) further reflects Sox's agreement that the running of the timed restrictive covenants in Section 3 will be tolled for any period of her violations. (*Id.* § 8(b)). And Sox agreed Relation "shall have a right to recover from [her] any attorneys' fees and litigation cost[s]" incurred in filing and prevailing on any action to enforce her Employment Agreement obligations. (*Id.*).

32. In addition to the restrictive covenants referenced above, Sox also agreed to certain reasonable protections related to Relation's confidential information. Among other things, Sox agreed not to directly or indirectly:

8

- use or disclose "Confidential Information" for any purpose other than for properly performing her duties for Relation (Exh. 2, § 4(c)(i));

- "access, copy, download, reproduce, or otherwise duplicate, record, abstract, or summarize any Confidential Information" for any unauthorized purpose (*Id.* § 4(c)(ii));

- "send any Confidential Information to, or store or maintain any Confidential Information on, [her] home or personal computers or any other personal electronic storage device or source" (*Id.* § 4(c)(iii); *see also id.* § 4(c)(i)); or

- retain any Confidential Information after the separation of her employment. (*Id.* § 4(c)(iii)).

33. Sox agreed that "Confidential Information" includes "all confidential or proprietary information of Relation, regardless of the format of the information, including, without limitation "all Trade Secret Information or any other information developed or used by [Relation] . . . that is not known generally to the public . . . and that gives [it] an advantage in the marketplace." (*Id.* § 4(a)(iii)).

34. Recently discovered events reveal Sox has not complied with her obligations under Sections 3 and 4 of her Employment Agreement, as outlined below.

**C.    *Sox Resigns Her Position with Relation, Citing Apparently False Pretenses, and Starts a Competing Business Just Down the Road***

35. In early November 2024, David Perry notified Relation he was retiring from the insurance business to "enjoy life after work." His employment with Relation ended on December 2, 2024. As detailed in a separate action pending in the Middle District of North Carolina, David Perry is now competing in direct breach of his ongoing APA obligations.

36. David Perry's competition did not become known or suspected until recent events involving his daughter, Sox, caused Relation to start investigating. That investigation is ongoing but already has yielded various alarming discoveries related to Sox and her family members' unfair

9

competition and deceptive acts intended to harm Relation and steal back for themselves the brand, goodwill, and client relationships Relation acquired for almost $10 million.

37. In January 2025, Sox notified Relation leadership of her intent to resign her position as External Growth Leader in Lexington. She specifically cited her "need to prioritize [her] health" as the driving factor in her decision. Her last day with Relation was February 3, 2025.

38. Relation understood Sox's purported reasons for leaving and wished her well. But over the next few weeks in February, two of Relation's Account Managers in the Lexington office also resigned from Relation without disclosing their next professional steps. Sox worked closely with both departing Account Managers while at Relation, and the timing and circumstances of the series of resignations raised suspicions.

39. Within a short time after those departures, numerous policies serviced by Relation's Lexington office had their broker of record ("BOR") change away from Relation. Atypically, Relation did not become privy to where the policies were moving. Adding to the concern and suspicion, various insureds notified Relation *they not only never authorized the BOR change, but they were entirely unaware they had moved their business away from Relation*. Relation had been the first to notify those insureds their business had been moved when the insureds called Relation's offices, but Relation confusingly was unable to locate or access their policies in its system. Some impacted insureds even reported their signatures had been forged.

40. As Relation dug further, it discovered the new existence of "Perry Group Insurance Services LLC." The name self-evidently is nearly identical to the Perry Insurance Group name Relation acquired through the 2021 APA. The similarity is intentional, and the similarities do not end there.

41.     The South Carolina Secretary of State lists Perry Insurance Group's formation date as March 6, 2025, with Sox as its registered agent.  Other information published by the Lexington Chamber and Visitors Center first listed David Perry as Perry Insurance Group's president.  The same website subsequently (and curiously) changed and now shows Sox in that role.  Either way, the leadership of Perry Group Insurance directly deceived Relation regarding the intent to compete:



42.     To make the affront to Relation even worse, Perry Group Insurance's office address on West Main Street in Lexington is just 1.9 miles and one left turn down the road from Relation's office where Sox, David Perry, and the recently-departed account managers had worked just weeks or months ago.

43.     The above facts alone demonstrate Sox and Perry Group Insurance's intent to create confusion and falsely associate their new business with the Perry Insurance Group brand, marks, and goodwill Relation purchased only a few years ago at great expense.  But that is not the end of the measures the defendants' have taken to unfairly compete.

44. Sox additionally is publicly using as her own—without Relation's authorization—the Perry Insurance Group graphic logo that Relation acquired via the APA. Sox's active LinkedIn profile prominently displays the logo behind her photo:



45. Relation additionally has discovered that Christopher Perry has been using the same logo, likewise without Relation's authorization. He is doing so in furtherance of his presumably separate insurance brokerage—Christopher E. Perry & Associates, LLC—which is primarily based in Columbia, South Carolina. E-mails recently found by Relation through its investigation show the Perry Insurance Group logo as the only graphic in Christopher Perry's signature block:



46. It also is now clear that Perry Group Insurance personnel *and* Christopher Perry are using the email domain @perryinsgrp.com to do business in the industry. That domain is nearly identical to the @perryinsgroup.com domain Relation purchased in the APA and that Sox, David Perry, and others used to do business at Perry Insurance Group and at Relation after the transaction.

47. The fact *both* Sox and Christopher Perry are improperly using the above marks and brand belonging to Relation indicates their coordination to unfairly compete in the marketplace. In fact, Sox is not only purporting to lead Perry Group Insurance, but Relation understands she is simultaneously further competing with Relation through a Lexington satellite office of Christopher Perry & Associates.

48. The upshot of the defendants' unfair competition and deceptive practices is simple: they are creating market confusion and a false association with the Perry Insurance Group business Relation acquired as a ploy to streamline their solicitation and diversion of the Relation Lexington office insureds to their competing agencies. The confusion is not theoretical. Relation clients have directly expressed confusion to Relation about which broker is managing their insurance coverage, and others have expressed surprise their policies are no longer with Relation but have moved to the defendants' book of business.

49. Given the circumstances and the information now available to it, Relation believes there is no doubt Sox has engaged—on the defendants' behalf—in the solicitation and inducement of Relation clients with which she had material contact at Relation. And there is likewise no doubt of her participation in inducing such clients to terminate their relationship with Relation—whether the clients know what is happening or not.

50. The plot to steal away Relation's business potentially has been many months in the making. Relation has discovered that, in September 2024, Sox e-mailed a linked spreadsheet titled "Perry Active Clients" to her personal Gmail address, in addition to David Perry. That list contains substantial confidential information related to the clients and their policies comprising Relation's Lexington book of business. Sox's actions were unauthorized, and there is no legitimate reason for her to contravene Relation policy or her Employment Agreement through her efforts to send

that confidential list to be accessed outside of Relation.  Clients Relation has now lost since Sox and David Perry began competing are included on the list.

51. The loss of Relation's clients to the defendants is ongoing through their continued deceptive means and unfair competitive measures.  The defendants' wrongful acts have continued even after Relation initiated the North Carolina action against David Perry, and even after counsel for Relation expressly demanded that Sox, Christopher Perry, and Perry Group Insurance all cease their unfair competition by letter in May 2025.  An injunction is necessary to stop further harm, and a judgment against all defendants is required to redress the substantial calculable harm already caused.

## FOR A FIRST CAUSE OF ACTION
(*Trade Dress Infringement / Unfair Competition under the Lanham Act – All Defendants*)

52. Relation realleges and incorporates the preceding paragraphs as if set forth fully herein.

53. The original and distinctive Perry Insurance Group business name, domain names, logos and other marks Relation purchased through the APA are unique, distinctive, non-functional, and represent the identity of Relation's Lexington business as it is known to the consuming public. They therefore constitute protected trademarks within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54. The defendants' unauthorized use of the nearly identical business name, domain name, e-mail addresses, logos, and other marks Relation purchased through the APA is likely to create—and has created—confusion and a false impression among consumers that the defendants' competing ventures are sponsored or endorsed by, originate from, or are otherwise affiliated with Relation. The defendants' misuse of this information is a deliberate attempt to publicly associate

with Relation and its Perry Insurance Group brand and capitalize on the goodwill and favorable commercial impression that Relation acquired through the APA at great expensive.

55. The infringing conduct of the defendants, including as described above, has been (and continues to be) intentional, in knowing disregard of Relation's property rights, and in willful violation of the Lanham Act's prohibitions on unfair competition and trade dress infringement.

56. Sox and Christopher Perry each have a financial interest in the unfair competition and have willfully and knowingly authorized, directed, and perpetrated the above-described acts of unfair competition and trade dress infringement. Sox and Christopher Perry therefore are each individually liable and responsible for those unlawful acts under the Lanham Act, along with Perry Group Insurance.

57. Defendants' misconduct, as described above and as may further be revealed in discovery, has unjustly enriched them caused damages and irreparable harm to Relation. Unless enjoined, that misconduct likely will continue to result in further such harm and damages. Relation seeks the recovery of its damages, an award of treble attorneys' fees, costs of suit, disgorgement of profits from the defendants and their competing business ventures, and appropriate injunctive relief to prevent further harm.

**FOR A SECOND OF ACTION**
(*Violation of the South Carolina Unfair Trade Practices Act, S.C. Code § 39-5-10, et seq. – All Defendants*)

58. Relation realleges and incorporates the preceding paragraphs as if set forth fully herein.

59. The defendants are engaged in "trade" or "commerce" within the meaning of those terms as used in Section 39-5-10(b) of the South Carolina Code.

60. The above wrongful conduct of the defendants constitutes unfair and deceptive acts and practices in the conduct of trade or commerce and, therefore, violates Section 39-5-20(a) of the South Carolina Code.

61. Defendants acted willfully because they knew or should have known their conduct constituted a violation of Section 39-5-20(a) of the South Carolina Code. Their acts are intended to deceive insureds and prospective insureds for the defendants' financial gain.

62. These unfair and deceptive acts and practices adversely affect the public interest because, among other reasons, they are capable of repetition and have occurred multiple times since Sox ceased providing services on behalf of Relation and launched Perry Group Insurance and began working for Christopher E. Perry & Associates.

63. Relation has suffered actual damages as a direct and proximate result of these unfair and deceptive acts and practices.

64. Relation is entitled to judgment against the defendants for the amount of its actual, general, compensatory, incidental, special, and consequential damages.

65. Furthermore, because the defendants' conduct was willful, Relation is entitled to an award of treble damages pursuant to Section 39-5-140(a) of the South Carolina Code.

## FOR A THIRD OF ACTION
### (*Breach of Contract – Defendant Sox*)

66. Relation realleges and incorporates the preceding paragraphs as if set forth fully herein.

67. The Employment Agreement is a valid contract entered by and between Relation and Sox, and is supported by valid consideration.

68. All conditions precedent to the enforcement of the Employment Agreement have been performed or satisfied. Relation has fully performed its obligations.

69. Despite the above facts, Sox has breached Section 3 of the Employment Agreement through her actions detailed above, including by directly or indirectly: soliciting Relation account managers to join a competing business; soliciting Relation clients to move their policies to new competitive ventures; inducing such clients to terminate their business relationship with Relation; performing insurance-related services for such former Relation clients on behalf of a competitor; and supervising the competitive performance of insurance or benefits services for such clients.

70. Sox additionally has breached Section 4 of the Employment Agreement by, among other things, her efforts to divert Relation confidential information to her personal possession for the purpose of unauthorized use or disclosure.

71. As a direct and proximate result of Sox's breaches of the Employment Agreement, Relation has suffered and will continue to suffer monetary damages.

72. Relation is entitled to judgment against Sox for the amount of its actual damages, according to all available measures, recovery of its attorneys' fees and costs as specified in Section 8 of the Employment Agreement, and a tolling of her timed restrictive covenants as also agreed in Section 8 of the Employment Agreement.

### FOR A FOURTH CAUSE OF ACTION
*(Tortious Interference with Contract - Defendant Perry Group Insurance)*

73. Relation realleges and incorporates the preceding paragraphs as if set forth fully herein.

74. Defendant Perry Group Insurance was at all relevant times, and remains, aware of Defendant Sox's continuing contractual obligations owed to Relation.

75. Despite that knowledge, Perry Group Insurance purposely interfered with Sox's fulfillment of her obligations by inducing Sox to breach those obligations for an improper purpose and by improper methods.

76. Perry Group Insurance condoned, ratified, assisted in and/or benefited from this misconduct. Its interfering actions were unjustified, intended to harm Relation for its own benefit, and were wanton, willful, intentional and in reckless disregard of Relation's rights.

77. Perry Group Insurance's actions have caused financial and other harm to Relation, and the harm is ongoing. Relation seeks to recover all available monetary damages incurred—based on all available measures—and exemplary damages due to the wanton, malicious and willful nature of Perry Group Insurance's misconduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Relation prays that the defendants be commanded to appear and answer this lawsuit, and the Court enter a judgment awarding Relation:

1. Preliminary and permanent injunctions against Sox, acting alone or in concert with others:

    (A) prohibiting her from taking any further action in breach of Sections 3 or 4 of the Employment Agreement;

    (B) prohibiting her from using any Acquired Mark, Intellectual Property, or other asset acquired by Relation in the APA, including those identified in Article 9.1 of the APA or the attached schedules;

    (C) requiring the immediate removal of any Acquired Mark, Intellectual Property, or other asset acquired by Relation in the APA, including those set forth or identified in Article 9.1 or the attached schedules, from any website, domain, email address, or other content-hosting site, document, or other piece of information used or disseminated by Perry Group Insurance or Christopher E. Perry & Associates.

2. Preliminary and permanent injunctions against Christopher Perry and Perry Group Insurance, whether acting alone or in concert with others, enjoining them as set forth in 1(B) and 1(C) above;

3.  Monetary damages in an amount according to the proof presented at trial, under all available measures of theories;

4.  Treble damages under Section 39-5-140(a) of the South Carolina Code;

5.  Exemplary damages in an amount to be determined by the Court;

6.  Recovery of Relation's attorneys' fees and costs;

7.  Pre-judgment and post-judgment interest, in the maximum amount allowed by law; and

8.  All such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**LITTLER MENDELSON, P.C.**

/s/ Benjamin T. Hepner
Benjamin T. Hepner
Federal Bar No. 13250
BHepner@littler.com
110 E. Court Street / Suite 210
Greenville, SC 29601
(864) 775-3191

Timothy A. Rybacki, TN Bar 034038
(*Pro Hac Vice Application Forthcoming*)
trybacki@littler.com
333 Commerce Street, Suite 1450
Nashville, TN 37201
(615) 514-4125

ATTORNEYS FOR PLAINTIFF RELATION INSURANCE SERVICES SELECT, INC.

Greenville, South Carolina
June 20, 2025