

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| RELATION INSURANCE SERVICES SELECT, INC., and RELATION INSURANCE, INC., | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Civil Action No. 3:25-6049-MGL |
| MEREDITH PERRY SOX, CHRISTPOPHER E. PERRY, and PERRY GROUP INSURANCE SERVICES, LLC, | § § § | |
| Defendants. | § | |

---

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM**

---

## I.    INTRODUCTION

Plaintiffs Relation Insurance Services Select, Inc., (Relation Select) and Relation Insurance, Inc., (Relation Insurance) (collectively, Relation) filed this civil action against Defendants Meredith Perry Sox (Sox), Christpopher E. Perry (Perry), and Perry Group Insurance Services, LLC, (Perry Group Insurance) (collectively, Defendants). The Court has jurisdiction as per 28 U.S.C. §§ 1331, 1332, and 1367.

Pending before the Court is Defendants' motion to dismiss Relation's amended complaint for failure to state a claim. Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of the Court the motion will be denied.

## II.     FACTUAL AND PROCEDURAL HISTORY

Relation is "a leading nationwide insurance brokerage firm offering business insurance, employee benefits solutions, retirement services, risk-management services, annuities, life insurance, and commercial and personal lines of property and casualty insurance products. Relation offers these and other insurance products and services to clients in the Carolinas and other areas of the United States."  Amended Complaint ¶ 19.

"In July 2021, Relation Select committed to paying nearly [ten] million [dollars] to acquire the assets of Perry Insurance Group, Inc. (Perry Insurance Group) from David Perry—the father of [Perry and Sox].  The assets Relation Select acquired included Perry Insurance Group's book of business, its goodwill, and the marks of the Perry Insurance Group brand."  *Id.* ¶ 21.  The parties executed an asset purchase agreement reflecting the sale.

"Prior to the July 2021 transaction, Sox worked for Perry Insurance Group in one of the highest-paying positions in the company.  Upon the transaction closing, Relation hired Sox as a Relation Insurance employee in a key client-facing position, working with Relation Select customers."  *Id.* ¶ 26.  "As [Sox] joined and worked for the benefit of [Relation,]" she signed an employment agreement "contractually promis[ing] not to engage in certain competitive activities during her employment with Relation Insurance or in the [two]-year period immediately after her departure, whenever that may occur."  *Id.* ¶ 2.

"In early 2025, Sox notified Relation she intended to resign her position as one of its External Growth Leaders based on her need to prioritize [her] health.  Her employment with Relation Insurance ended on February 3, 2025.  At that time, Relation had no reason to question Sox's plan to leave the insurance industry to focus on her health issues."  *Id.* ¶ 4 (internal quotation marks omitted).

2

On March 6, 2025, Sox formed Perry Group Insurance.  Relation alleges, "[i]nstead of taking steps to distinguish her new competing business from the Perry Insurance Group brand Relation acquired in 2021, . . . . Sox deliberately has sown confusion and sought to package the public-facing image of her new agency to create a false impression the businesses are the same. Sox did so to steal back the goodwill associated with Perry Insurance Group that Relation purchased at great expense."  *Id.* ¶ 6.

Relation asserts,

a) Sox incorporated her competing business as Perry Group Insurance Services, LLC . . . a name requiring a double-take to differentiate [from Perry Insurance Group, Inc.];

b) [Sox] and [Perry] chose contact information, including email addresses, that are virtually indistinguishable (meredith@perryinsgrp.com) to those used at Perry Insurance Group (meredith@perryinsgroup.com), the latter domain being an asset Relation explicitly purchased in the 2021 transaction;

c) Sox and others now using the @perryinsgrp.com [email] domain— including . . . Perry—also are using without authorization the same Perry Insurance Group logo Relation acquired in the deal . . .

d) Within only days of Sox leaving Relation to supposedly prioritize her health, certain account managers with whom Sox closely worked in Relation's Lexington office abruptly resigned before next surfacing at Perry Group Insurance; and

e) Perry Group Insurance opened its new office less than two miles away from the Relation/Perry Insurance Group office where Sox, David Perry, and the recently departed account managers worked.

*Id.* ¶ 6 (internal quotation marks omitted).  Relation insists it "has every reason to believe Sox and her co-conspirators' choices of name, [email] address, office location, and assumed account management staff for Perry Group Insurance are not accidental.  They are action items in a plan to deceive the public—including Relation Select's clients, prospects, and the broader insurance market—into incorrectly believing Perry Group Insurance is the same as Relation's business down the road."  *Id.* ¶ 7.

3

Further, Relation contends, "in September 2024, Sox e-mailed a linked spreadsheet titled 'Perry Active Clients' to her personal [email] address, in addition to David Perry.  That list contains substantial confidential information related to the clients and their policies comprising Relation's Lexington book of business."  *Id.* ¶ 53.  Relation posits "it is now apparent . . . [Defendants] have targeted insured clients on that list to move their business to Perry Group Insurance or [Perry's] insurance agency—whether the clients knew of the change or not."  *Id.*  Moreover, "[v]arious clients have contacted Relation and expressed actual confusion about [D]efendants' affiliation with Relation."  *Id.*  And, "many clients whose policies Relation unwittingly has lost so far even have informed Relation they did not authorize such a change at all."  *Id.* (emphasis omitted).

Accordingly, as the Court stated above, Relation filed this lawsuit.  Against all Defendants, Relation asserts claims for trade dress infringement/unfair competition (trade dress infringement) under the Lanham Act, 15 U.S.C. § 1051 et seq., and for violations of the South Carolina Unfair Trade Practices Act (SCUTPA), S.C. Code Ann. § 39-5-10 et seq.  Relation also advances a breach of contract claim against Sox and a tortious interference with a contract claim against Perry Group Insurance.

Defendants recently filed this motion to dismiss Relation's amended complaint for failure to state a claim.  Relation responded, and Defendants replied.  Having been fully briefed on the relevant issues, the Court will now adjudicate the motion.

## III.     STANDARD OF REVIEW

A party may move to dismiss a complaint based on its "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]"  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.

1999).  To survive a motion to dismiss under Rule 12(b)(6), the complaint must have "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss for failure to state a claim, "the [C]ourt should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  But, the Court need not "accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards*, 178 F.3d at 244.

"[A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6) . . . generally cannot reach the merits of an affirmative defense . . . . But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  Even still, "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Id.* (emphasis omitted) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

## IV.    DISCUSSION AND ANALYSIS

### A.    *Whether the Court should dismiss Relation's trade dress infringement claim*

Defendants first argue the Court should dismiss Relation's trade dress infringement claim "because the allegedly offending conduct—use of a business name, domain name, [email] address, and logo—does not qualify for trade dress protection."  Defendants' Motion at 2.

Trade dress consists of a product's "total image and overall appearance, including its size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Ashley*

*Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 368 (4th Cir. 1999) (internal quotation marks omitted) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992)).  It "has been held to include such things as: the cover of a book, a magazine cover design, the use of a lighthouse as part of the design of a golf hole, the 'G' shape of a Gucci watch, a combination of features of a folding table, a fish-shaped cracker, the 'Marlboro Man' western cowboy motif, and . . . the layout and appearance of a mail-order catalog[.]" *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 630 (6th Cir. 2002).

Relation, however, maintains "[c]ourts widely recognize that logos, websites, and even names may form protectable trade dress under the Lanham Act.  And contrary to Defendants' other arguments, the [a]mended [c]omplaint alleges sufficient facts to establish the remaining elements of a claim for trade dress infringement . . . , including facts demonstrating actual confusion within the insurance marketplace."  Relation's Response at 2.

"Even before it reaches the question of protectability, . . . a district court should scrutinize a plaintiff's description of its trade dress to ensure itself that the plaintiff seeks protection of visual elements of its business."  *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014).

Here, Relation posits "[t]he original and distinctive Perry Insurance Group business name, domain names, logos[,] and other marks Relation purchased through the [asset purchase agreement]" constitute protectable trade dress.  Amended Complaint ¶ 56.  It further asserts Defendants have infringed upon such trade dress by using a "nearly identical business name, domain name, [email] addresses, logos, and other marks" without authorization.  *Id.* ¶ 57.

The Court agrees with the reasoning of those courts that have held business names, domain names, and email addresses are generally unprotectable as trade dress.  *See, e.g.*, *Innovative Metal Craft, LLC v. Whaley*, No. 1:17-cv-138, 2020 WL 2065281, at *5 (W.D. Pa. Apr. 29, 2020)

(explaining trade names, web addresses, and email domains "are not things that create a 'visual impression' on consumers or 'dress' the product" and are thus "not per se protectable as 'trade dress'" (quoting *Fair Wind*, 764 F.3d at 309)); *Greenberg v. Johnston*, No. cv-14-4605, 2014 WL 12586252, at *3 (C.D. Ca. Oct. 22, 2014) (stating domains and web addresses fail to constitute protectable trade dress).

Nevertheless, "a distinctive logo, pattern, or other arbitrary shape or style may be non-functional and protectable as a trade dress." *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 986 F.3d 250, 258 (3d Cir. 2021); *see Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1208 (11th Cir. 2004) (suggesting a logo qualifies as protectable trade dress and proceeding to evaluate whether the plaintiff adequately demonstrated a likelihood of confusion); *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 509–10 (6th Cir. 2013) (same). So, accepting the well-pleaded allegations in the amended complaint as true and drawing all reasonable inferences from those facts in favor of Relation, the Court concludes Relation has sufficiently alleged protectable trade dress.

The Court will therefore deny Defendants' motion to dismiss this claim.

### B.     *Whether the Court should dismiss Relation's SCUTPA claim*

Defendants next assert Relation's SCUTPA claim "fails as to Sox because this is inherently a breach of contract dispute arising out of her employment relationship with Relation Insurance, as to Perry because he is simply a competitor in the marketplace, and as to [Perry Group Insurance] because its alleged conduct does not implicate the public interest." Defendants' Motion at 2.

Relation, on the other hand, emphasizes "no employer-employee relationship existed with [Defendants] when the underlying wrongful actions occurred." Relation's Response at 13. Rather, Relation posits, this dispute arose from "Defendants' multifarious scheme to deceive a marketplace of insurance consumers." *Id.*

"To recover in an action under the SCUTPA, the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected the public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Est. of Carr ex rel. Bolton v. Circle S. Enters., Inc.*, 664 S.E.2d 83, 89 (S.C. Ct. App. 2008).

Defendants aptly note the SCUTPA fails to apply to acts taken exclusively within an employer-employee relationship. *See, e.g.*, *Miller v. Fairfield Cmtys., Inc.*, 382 S.E.2d 16, 20 (S.C. Ct. App. 1989) (explaining the SCUTPA is inapplicable to matters involving employer-employee relations); *Davenport v. Island Ford, Lincoln, Mercury, Inc.*, 465 S.E.2d 737, 740 (S.C. Ct. App. 1995) (observing the SCUTPA "does not apply to acts that take place in an employer-employee relationship").

But, as the Court previously stated, Relation alleges "[v]arious clients have contacted Relation and expressed actual confusion" because of Defendants' purported unfair and deceptive acts. Amended Complaint ¶ 7; *see id.* ¶ 41 (stating, shortly after Sox's departure, policies serviced by Relation had their broker of record changed without the insured's authorization or awareness). And, at this early stage of the litigation, the Court holds it would be premature to decide Relation is unentitled to relief under any set of facts that could be proven consistent with these allegations. *See Florence Paper Co. v. Orphan*, 379 S.E.2d 289, 213 (S.C. 1989) (clarifying "it is possible for the adverse impact on public interest to be based on a private injury"); *Mylan Labs.*, 7 F.3d at 1134 ("In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief.").

Consequently, the Court will also deny Defendants' motion to dismiss this claim.

### C. *Whether the Court should dismiss Relation's breach of contract claim*

Defendants further contend the Court should dismiss Relation's breach of contract claim because the restrictive covenants in Sox's employment agreement are unenforceable.

Relation, however, maintains "[a]ll of Defendants' arguments regarding the validity or enforceability of Sox's [e]mployment [a]greement turn on factual issues." Relation's Response at 15. And, Relation insists the Court "[is] not authorized to resolve issues of fact on a Rule 12(b)(6) motion." *Id.*

In South Carolina, "[t]he elements for a breach of contract are the existence of the contract, its breach, and the damages caused by such breach." *S. Glass & Plastics Co. v. Kemper*, 732 S.E.2d 205, 209 (S.C. Ct. App. 2012) (citing *Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (S.C. 1962)).

Here, Relation alleges Sox "executed an [e]mployment [a]greement in line with her job duties[] and the need for Relation to protect its legitimate interests in its client relationships and the substantial confidential information to which Sox had access." Amended Complaint ¶ 26. The agreement indisputably contains restrictive covenants. But, according to Relation, Sox breached these covenants by "soliciting Relation Insurance account managers to join a competing business; soliciting Relation Select clients to move their policies to new competitive ventures; inducing such clients to terminate their business relationship with Relation Select; performing insurance-related services for such former Relation Select clients on behalf of a competitor; and supervising the competitive performance of insurance or benefits services for such clients." *Id.* ¶ 73. And, because of Sox's breach, Relation claims it "has suffered and will continue to suffer monetary damages" in the form of lost profits. *Id.* ¶¶ 50–54, 75.

Given these allegations, the Court determines the enforceability of the restrictive covenants is an issue better suited for summary judgment. Indeed, the validity of such covenants necessarily

hinges upon the nature of Sox's contacts with Relation's competitors, clients, and employees, all of which will be elucidated after discovery. *Cf. Faces Boutique, Ltd. v. Gibbs*, 455 S.E.2d 707, 709 (S.C. Ct. App. 1995) ("[E]ach case concerned with the enforceability of covenants not to compete contained in employment contracts must be decided on its own facts." (citing *Stringer v. Herron*, 424 S.E.2d 547, 547 (S.C. Ct. App. 1992))).

Accordingly, the Court will deny Defendants' motion to dismiss this claim, as well.

### D.     Whether the Court should dismiss Relation's tortious interference claim

Finally, Defendants posit the Court should dismiss Relation's tortious interference claim because Perry Group Insurance "cannot act except through Sox, who cannot interfere with her own [employment agreement,]" Defendants' Motion at 2, and because the amended complaint "lacks factual allegations of improper conduct by [Perry Group Insurance,]" *id.* at 23.

Relation, on the other hand, avers Defendants "ignore[] the legal separateness of Sox and Perry Group Insurance." Relation's Response at 27. Relation contends South Carolina law both recognizes a manager of a limited liability company can wrongfully interfere with her company's contracts and permits an intentional interference with a contract claim based on an entity's alleged interference with a restrictive covenant. Relation further avows the amended complaint alleges "Perry Group Insurance personnel are improperly and unlawfully utilizing [its] protected marks and/or competing against [it], conduct which no doubt breaches Sox's [e]mployment [a]greement." *Id.* at 27–28 (internal quotation marks omitted).

To state a claim for tortious interference with a contract in South Carolina, "the plaintiff must establish (1) the existence of the contract; (2) the wrongdoer's knowledge of the contract; (3) the intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages." *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 336 S.E.2d 472, 473 (S.C. 1985) (citing

*DeBerry v. McCain*, 274 S.E.2d 293, 296 (S.C. 1981)), *overruled in part on other grounds by Paradis v. Charleston Cnty. Sch. Dist.*, 861 S.E.2d 774 (S.C. 2021).

As to Defendants' assertion Perry Group Insurance "cannot act except through Sox, who cannot interfere with her own [employment agreement,]" Defendants' Motion at 2, the Court is unconvinced.

"[A] claim for tortious interference with a contract cannot be made against one who is a party to the contract at issue." *Dutch Fork Dev. Grp. II, LLC v. SEL Props., LLC*, 753 S.E.2d 840, 844 (S.C. 2012). But, "[a] limited liability company is legally distinct from its members . . . ." S.C. Code Ann. § 33-44-201; *see id.* § 33-44-303(a) (stating, absent certain circumstances, "the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company"). And, the issue of whether Perry Group Insurance, a separate entity and non-party to Sox's employment agreement, can be held liable for tortious interference is a factual question more appropriate for summary judgment. *Cf. Dutch Fork Dev. Grp.*, 753 S.E.2d at 845 ("[A]s a matter of law, a manager of a limited liability company can wrongfully interfere with his company's contracts and be held individually liable for his acts. In light of this holding, the question becomes whether [the manager can] be held liable under the facts of the instant case.").

The Court is likewise unpersuaded this claim is subject to dismissal on the ground the amended complaint "lacks factual allegations of improper conduct by [Perry Group Insurance,]" Defendants' Motion at 23.

As the Court previously noted, Relation contends "Perry Group Insurance opened its new office less than two miles away from the Relation/Perry Insurance Group office where Sox, David Perry, and the recently departed account managers worked." Amended Complaint ¶ 6(e). Relation

further alleges the location of this office is just one "action item[] in a plan to deceive the public—including Relation Select's clients, prospects, and the broader insurance market—into incorrectly believing Perry Group Insurance is the same as Relation's business down the road." *Id.* ¶ 7.

Moreover, Relation posits Sox's formation of Perry Group Insurance "provided [Sox] a corporate platform to unfairly compete with Relation and realize the illicit benefits flowing from breaches of her contractual obligations owed to Relation." *Id.* ¶ 78. And, Relation maintains, "[w]ithout the separate existence and cover of Perry Group Insurance[] and its willingness to position Sox to interfere with her Relation covenants, breaches of her nonsolicitation covenants would not or could not have successfully occurred." *Id.*

The Court concludes such allegations—which, again, it accepts as true for purposes of this motion—sufficiently indicate some tortious interference on behalf of Perry Group Insurance.

For all these reasons, the Court will deny Defendants' motion to dismiss this claim, too.

## V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Defendants' motion to dismiss is **DENIED**.

Given the Court's ruling, the stay granted on September 25, 2025, is hereby lifted.

**IT IS SO ORDERED.**

Signed this 21st day of January 2026, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE